RICE, Respondent, v. WABASH RAILROAD COM-
PANY, Appellant.

**St. Louis Court of Appeals, April·26, 1904.**

1. **COMMON CARRIERS: Reduced Freight Rate.** In an action
against a railroad company for damages to cattle, caused by
delay in 'shipping, evidence that they were valued at $50 per
head at the point of shipment and sold for $52.03 at their des-
tination, was not sufficient to show the cattle were undervalued,
and for that reason a reduced freight rate was allowed to
shipper.

2. ———: ———. And when the agent of the company estimated
the weight of the cattle and incorporated his estimate in the
shipper's contract, the fact that the cattle weighed more than
the estimate, did not permit the company to claim it carried
the cattle at a reduced rate.

3. ———: **Delay in Shipping: Liquidated Damages.** A stipula-
tion in the shipping contract that, in case of unusual delay, the
shipper's damages should be limited to the amount expended
by him in the purchase of food and water for the cattle, did not
· relieve the company of its common law liability for negligently
permitting such delay, in the absence of a special consideration
for such provision.

Appeal from Audrain Circuit Court.—*Hon. H. W.
Johnson*, Judge.

AFFIRMED.

*Geo. S. Grover* and *Geo. Robertson* for appellant.

(1) The burden of proof was upon the plaintiff in
this action to establish the negligence of the defendant.
Where, as in this case, a mere delay is shown without
establishing the negligence of the defendant, the plain-
tiff should have been nonsuited. Witting v. Railroad,
101 Mo. 640; Cash v. Railroad, 81 Mo. App. 109; Plefka
v. Knapp, 145 Mo. 316; 3 Joyce on Damages, sec.
1282. (2) The court erred in giving plaintiff's in-
struction for the reason that it is a declaration of law,

declaring that the shipping contract was void absolutely and is contrary to decisions cited under point 3, herein, and as counter proposition the court erred in refusing the instruction, declaring the true rule of damages under the contract. And further, the court erred in refusing defendant's third instruction, because it cut out a purely speculative element, which is too uncertain to authorize damages. Vaughn v. Railroad, 62 Mo. App. 461; 2 Joyce on Damages, secs. 1284-1285. (3) The court erred in refusing to give defendant's instruction No. 1, because that instruction submitted the true rule of damages as provided for in the contract of shipment. Kellerman v. Railroad, 136 Mo. 177; Wyrick v. Railroad, 74 Mo. App. 406; Hart v. Railroad, 112 U. S. 331; Hutchinson on Carriers (2 Ed.), sec. 249; Sedgwick on Damages (8 Ed.), sec. 416; Graham v. Bickam, 1 Am. Dec. 328; Harmony v. Bingham, 12 N. Y. 99; Vaughn v. Railroad, 78 Mo. App. 639; Live Stock Com. Co. v. Railroad, 87 Mo. App. 330; Bowring v. Railroad, 90 Mo. App. 324. (4) The fraud perpetrated by the plaintiff upon the defendant, as shown by the undisputed testimony in this case, destroyed his right of action. Rev. Stat. U. S., 1901, vol. 3, p. 3161.

*R. D. Rodgers* and *P. H. Cullen* for respondent.

(1) The fact that one of the cars in defendant's train was so loaded as to cause a serious wreck on the St. Charles bridge, delaying the train and holding it many hours, raises the inference of negligence on the part of the defendant, sufficient to establish plaintiff's prima facie right of the submission to a jury. Such delay raises a presumption of negligence. Sloop v. Railroad, 93 Mo. App. 605; Anderson v. Railroad, 93 Mo. App. 678; Blanchard v. Railroad, 60 Mo. App. 271; Glasscock v. Railroad, 86 Mo. App. 114; Minter v. Railroad, 82 Mo. App. 132. (2) While a common carrier may by special contract limit his common law liability

as an insurer of goods carried by him, he can not limit his ability so as to exempt himself from loss or damage occasioned by his own or his servant's negligence. Witting v. Railroad, 101 Mo. 632; Dawson v. Railroad, 79 Mo. 300; Carroll v. Railway, 88 Mo. 244; Kellerman v. Railroad, 136 Mo. 190.

BLAND, P. J.—The suit is to recover damages in loss of weight and a better market caused by the delay of defendant in shipping one carload of plaintiff's cattle from Mexico, Missouri, to East St. Louis, Illinois. We adopt the following statement of the facts from the abstract of appellant in respect to the shipment:

"On the eighth day of February, 1903, the plaintiff was the owner of twenty-one head of cattle, which he desired to ship from Mexico, Missouri, to the National Stock Yards at East St. Louis, Illinois. He went to the agent of the defendant in Mexico and there signed an offer to ship said cattle, estimating their weight at 1,100 pounds each, and placing the value thereon at $50 per head. The defendant accepted this offer, and a contract of shipment was thereupon executed by the parties. There is no dispute as to the execution of this contract, nor of the fact that it was fairly made.

"About 7:30 or eight o'clock that evening the cattle were loaded by plaintiff and taken into one of defendant's trains to be transported to the point of destination, and in the usual course of transportation would have reached their destination the next morning at from eight to nine o'clock, in time for the market of the ninth of February.

"The train carrying the cattle was a local train, and at Mexico picked up a car carrying a steam shovel. This steam shovel was on its way from some point in Minnesota to St. Louis; had come on to defendant's road at Des Moines, and for some reason stopped at Mexico; was there inspected by its car inspector, and then taken into this train to be forwarded on to St.

Louis. Some parts of the device extended upward and were higher than an ordinary freight car. In passing over the defendant's track from Des Moines to Mexico it had safely passed through and over as many as three bridges with overhead structures similar to the bridge over the Missouri river at St. Charles, and on its way from Mexico to St. Charles passed safely through and over two more bridges of a similar design. The train carrying the cattle and the steam shovel arrived at St. Charles on time (about three o'clock in the morning) and in passing through that bridge came in contact with some of the girders overhead, thereby stopping and delaying the train. Plaintiff was on the train in charge of his cattle, and at that point he left and took an M., K. & T. train for St. Louis.

"On account of this delay at St. Charles the cattle did not arrive at the stock yards until half past two o'clock of the ninth, consequently too late for the market of that day; were kept over and sold in the market of the next day.

"Plaintiff complains of the extra shrinkage of the cattle on account of this delay, and also that the cattle sold for a little less per hundred than they would have sold for had they not been delayed."

The plaintiff's evidence shows that he estimated the weight of the cattle (21 head) at twelve hundred pounds each, but the agent of the company, who signed the shipping contract, said he would put their weight at eleven hundred pounds each. The rate charged was 11 1-4 cents per hundred pounds and the plaintiff paid freight on 25,500 pounds ($28.70). When he sold the cattle (the next day after their arrival) they weighed 26,330 pounds.

For the purpose of showing that the cattle were carried at a reduced rate and that the seventh clause of the contract, to-wit, "The party of the second part, in consideration of the rate named in this contract, further agrees to water and feed said stock at his or their own

risk and expense, while the same is in the cars of said first party or connecting lines, and, in the event of any unusual delay or detention of said live stock while on said trip, from any cause whatever, the party of the second part agrees to accept, as full compensation for all loss or damage sustained in consequence of such delay, the amount actually expended by him or them in the purchase of food and water for the stock aforesaid,'' was founded on a valid consideration the defendant offered evidence tending to show that 11 1-4 cents per hundred pounds was the regular and lowest rate between Mexico and East St. Louis on all cattle valued at from thirty to fifty dollars per head; that a higher rate was charged on a higher valuation or a better class of cattle and that the rate varied with the grade and value of the cattle; that the rates were based on the shipper's valuation, not exceeding the following: ''Each horse, pony, gelding, mule or jack, one hundred dollars; each ox, bull or steer, fifty dollars; each cow, thirty dollars; each calf, ten dollars; each hog, ten dollars; each sheep or goat, three dollars, where the declared valuation exceeds the above an addition of twenty-five per cent will be made to the rate per hundred pounds for each hundred per cent or fraction thereof of additional declared valuation per head.'' That a valuation is put upon stock by the shipper for the purpose of shipping, the rate being regulated by the value put upon the stock; that there is but one rate for stock of the same class and valuation; that these rates are scheduled and are the regular rates adopted by a number of railroads entering East St. Louis and St. Louis and have been approved by the Interstate Commerce Commission; that this schedule of rates was kept on file at the defendant's depot at Mexico but was not posted in the office at the time the shipment was made; that every shipper is required to place a value on his stock and if he refuses to do so, not less than one hundred and fifty per cent of the schedule rate is added.

Plaintiff testified that, though a frequent shipper of cattle from Mexico, he had never seen a schedule rate posted in the railroad office at that place, had never seen the one said to be on file there, and had never been informed that such a schedule was on file in that office; that he knew of but one rate, the one charged, and had never been told by the agent of the company at Mexico that there was any other rate, or that the rates varied with the classification and value of the stock shipped.

The cattle were valued at fifty dollars per head by the plaintiff. He realized on their sale in East St. Louis an average of $52.03 per head. Evidence was offered by plaintiff tending to prove a shrinkage in the weight of the cattle caused by the delay at St. Charles and the decline in the market at East St. Louis from February ninth to tenth.

The court, in substance, instructed the jury that if the delay at St. Charles was caused by the negligence of the defendant, and plaintiff sustained damages thereby, it should find the issues for him and, on the theory that the defendant was not relieved of its common law liability by virtue of the contract of shipment, gave an appropriate instruction on the measure of damages. For the defendant the court gave the following instruction:

"The court instructs the jury that before the plaintiff is entitled to recover in this case he must prove, to the reasonable satisfaction of the jury, by the greater weight of the evidence in the case, that the defendant in making said shipment was negligent and that the plaintiff was damaged on account thereof, and you are further instructed that you can not infer or presume negligence merely from the fact of a delay or from the fact that the car carrying the steam shovel or the steam shovel caught in the girders over the St. Charles bridge. But the plaintiff must show that said shovel caught in the bridge and caused the delay, as the result of defendant's negligence, and although there was a delay by

reason of negligence by defendant, yet before the defendant can be liable in damages you must find that plaintiff was damaged by reason thereof.''

And refused the following:

''The court instructs the jury that if you find for the plaintiff, then the damages are liquidated by the contract read in evidence at the amount paid out by plaintiff for feed, etc., on account of the delay and the proof in this case shows said amount to be $3.50 and you are instructed that the damages can not exceed that amount.''

Verdict and judgment were given for plaintiff in the sum of $70.15.

The main contention of defendant on the appeal is that, in consideration of a reduced rate and free transportation furnished plaintiff, plaintiff agreed to accept as liquidated damages caused by any delay in the shipment of his cattle, the amount expended by him for feed and water for the cattle. Defendant arrives at the conclusion that plaintiff was given a reduced freight rate from the fact that the weight of the cattle was under estimated as was also their value. The evidence shows that if their value had been estimated at over $50 per head, a higher rate would have been charged, and that their actual weight exceeded the estimated weight by eight hundred and thirty pounds.

In respect to the value of the cattle, we do not think the evidence shows they were undervalued. They were valued at $50 per head at Mexico and sold on an average of $52.03 in East St. Louis. As they were shipped from Mexico to East St. Louis to reach a better market the inference can not be drawn, in the absence of evidence to the contrary, and there is none, that they were worth as much in Mexico as in East St. Louis. In respect to the weight, the uncontradicted evidence is that plaintiff estimated the weight of the cattle to the agent of the company at Mexico at twelve hundred pounds each, and the agent acting for the company made his own estimate

at eleven hundred pounds each and on his own motion incorporated his estimate in the contract of shipment, so it appears that the company estimated the weight and on its own estimate agreed to carry the cattle to East St. Louis for $28.20. The error in the estimate was the company's, not the plaintiff's. The plaintiff having made the contract on the estimate made by the company to carry the cattle for a fixed sum, the defendant is in no position to demand a greater sum, and much less to claim that it carried the catttle for a reduced freight rate.

As to the free transportation furnished plaintiff, it will suffice to say that it takes at least two competent persons to make a contract and there is no evidence whatever that plaintiff agreed to release defendant from its common law liability in consideration that it would furnish him free transportation, and there is not a syllable of evidence in the record proving or tending to prove any consideration whatever in support of the seventh clause of the contract of shipment. We think for this reason the court properly instructed the jury as to the law of the case.

In respect to the court history of the motions for new trial and in arrest of judgment, what is said in the case of Hendrix v. Wabash Railway Company, — Mo. App. — ,decided at this term of court, is applicable to the facts in this case and for the reasons given in the Hendrix case we hold that Judge Johnson had jurisdiction to pass upon the motions.

No reversible error appearing in the record, the judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.